Donald M. Barker (CA SBN 145464)
lawbarker40@gmail.com
THE LAW OFFICES OF DONALD M. BARKER
2151 Michelson Drive, Suite 140
Irvine, CA 92612
(949) 278-3655

John H. Ray, III (IL SBN 6282383) (Pro Hac Vice to be Filed)
jray@rayandcounsel.com
Marcletta Kerr (IL SBN 6275261) (Pro Hac Vice to be Filed)
mkerr@rayandcounsel.com
RAY & COUNSEL, P.C.
10044 South Leavitt Street
Chicago, IL 60643
(617) 645-3000 (p) (312) 940-5831 (f)

*Attorneys for plaintiff Evgeny Merzlyakov*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVGENY MERZLYAKOV, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> 4D REALITY, INC., ROUBEN SIMONIAN, GEORGE BENASHVILI, and SIMONIAN & ASSOCIATES CONSULTING, INC., ) <br><br> Defendants. ) | Case No. <br><br> **COMPLAINT FOR:** <br><br> **1. ACCOUNTING;** <br> **2. BREACH OF CONTRACT;** <br> **3. BREACH OF FIDUCIARY DUTY;** <br> **4. UNJUST ENRICHMENT; and** <br> **5. DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Evgeny Merzlyakov ("Merzlyakov" or "Plaintiff"), by and through

his attorneys, hereby alleges as follows against 4D Reality, Inc. ("4D Reality"),

Rouben Simonian ("Simonian"), George Benashvili ("Benashvili"), and Simonian & Associates Consulting, Inc. ("Simonian Consulting," and all collectively, "Defendants"):

## INTRODUCTION

1.      This is a diversity and declaratory judgment action arising under 28 U.S.C. § 1332, and 28 U.S.C. §§ 2201 and 2202, for Nevada state law causes of action for an accounting, breach of contract, breach of fiduciary duty, unjust enrichment and for a declaratory judgment, seeking, *inter alia*, compensatory and punitive damages, costs and attorneys' fees, as well as specific performance and a declaration of the rights of the parties related to the claims herein.

2.      In this case, after Merzlyakov invested over $289,024 into a joint venture between the parties, Simonian (who exclusively controlled the 4D Reality bank account into which the majority of the money was invested) is attempting to walk away—or more aptly, abscond—without an accounting, financial statements or any other records or documentation demonstrating what he did with the money. By all accounts, however, Simonian simply funneled the money into his own corporation's accounts, to pay for various expenses in operating his business, Simonian Consulting.  Simonian's corporate fraud breaches not only his fiduciary duties to his joint venture partners, but also the shareholders agreement between the parties, as well as the corporate governance laws of Nevada.

3.      By this action, Plaintiff seeks to recover the over $289,024 which he

was defrauded into investing in 4D Reality by Simonian, as well as to receive an

accounting for the ongoing misappropriation and misuse of funds.

## PARTIES

4.      Evgeny Merzlyakov is an individual, and resident of St. Petersburg,

Russian Federation.  At all times relevant hereto, Merzlyakov was a member of the

board of directors of 4D Reality, Inc., and was its designated corporate treasurer.

5.      Rouben Simonian is an individual, and resident of Irvine, California.

At all times relevant hereto, Simonian was a member of the board of directors of

4D Reality, Inc., and was its designated president.  In addition, at all times relevant

hereto, Simonian was also the chief executive officer, chief financial officer and

corporate secretary of Simonian & Associates Consulting, Inc.

6.      George Benashvili is an individual, and resident of Hollywood,

Florida.  At all times relevant hereto, Benashvili was the designated corporate

secretary of 4D Reality, Inc.

7.      4D Reality, Inc. is a Nevada corporation, formed on March 30, 2018,

with its principal place of business at 19800 MacArthur Boulevard, Suite 300,

Irvine, California, 92612.

8.      Simonian & Associates Consulting, Inc., is a Florida corporation,

formed on November 18, 2003, and a registered foreign corporation in California

since June 4, 2010, with its principal place of business at 19800 MacArthur

Boulevard, Suite 300, Irvine, California, 92612.

## JURISDICTION AND VENUE

9.    This action arises under the laws of the State of Nevada.  This Court

has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Plaintiff is a citizen of a foreign state – Russian Federation – and all Defendants

are citizens of a different U.S. state – California, Nevada and Florida.  The amount

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

At a minimum, Plaintiff seeks damages related to and in the amount of at least the

amount transferred to Defendants, over $289,0024.

10.    This Court also has jurisdiction over Plaintiff's claims for declaratory

and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.    Venue is proper in this District pursuant to 18 U.S.C. §§ 1391 and

1965, insofar as substantially all Defendants reside and transact business in this

District, and a substantial part of the events and/or conduct giving rise to this

action occurred within this District.

## FACTS

12.    Evgeny Merzlyakov ("Merzlyakov"), Rouben Simonian ("Simonian")

and George Benashvili ("Benashvili") entered into a joint venture in the United

States to market and sell Merzlyakov's intellectual property and augmented reality

4D technology products, using a corporate entity, 4D Reality, Inc. ("4D Reality"). The venture was to be funded principally by Merzlyakov, and managed by all three of the individuals, but most directly by Simonian as president, according to various agreements between them, including a shareholders agreement for the company.

13.     As part of the preliminary development of the venture, as requested by Simonian, Merzlyakov paid $7,500 to AugmentedReality.org for 4D Reality to attend its Augmented World Expo as an exhibitor, an organization and conference that provides discounts to augmented reality industry events, networking opportunities within the industry, educational programs and technical training, market research, promotional programs, and industry lobbying.

14.     Simonian registered the exhibitor registration to his own company, Simonian and Associates Consulting, Inc. ("Simonian Consulting").

15.     On March 26, 2018, Merzlyakov sent $10,000 to Hickman, Palermo, Becker & Bingham LLP ("Hickman"), to prepare and file patent applications for the technology.

16.     On March 4, 2018, at Simonian's direction, Merzlyakov sent $2,050.00 to Dale Hanger, CPA ("Hanger") to incorporate the company.  And on March 30, 2018, Hanger, as incorporator, signed and filed articles of incorporation for 4D Reality with the Nevada Secretary of State, designating Simonian and Merzlyakov as directors of the company, with authorized shares of 70,000.

17.    No other directors were designated in connection with the articles of

incorporation.

18.    On 4D Reality's Initial List of Officers, Directors and State Business

License Application, filed the same day as the articles of incorporation, but signed

the day before on March 29, 2018, 4D Reality listed Simonian as both president

and director, Merzlyakov as treasurer and George Benashvili as secretary.  Under

NRS 78.035, however, regardless of the list, the designation of the board in the

articles of incorporation constitutes "the first board of directors or trustees" of the

corporation.

19.    On April 17, 2018, based upon representations by Simonian and 4D

Reality that it was issuing shares to Merzlyakov, and as consideration for his

purchase of 60,200 shares of 4D Reality stock, Merzlyakov wired $60,200 to 4D

Reality's Bank of America account, which had been set up and exclusively

controlled by Simonian.

20.    Because Simonian, as president of 4D Reality, failed to prepare the

necessary board resolutions or the shareholders agreement, however, on June 2,

2018, Merzlyakov, Simonian and Benashvili entered into a Preliminary

Shareholders Agreement ("Preliminary Agreement"), pursuant to which, inter alia,

the parties agreed that "the authorized capital of the Company consists of an

unlimited number of common voting shares without par value, of which the

following are issued and outstanding as fully paid and non-assessable:

> Shareholder: No. of Common Shares:
>
> Evgeny Merzlyakov 60,200
>
> Rouben A Simonian 9,100
>
> George Benashvili 700
>
> TOTAL COMMON SHARES ISSUED: 70,000"

21.     The parties also agreed that "Evgeny invests to cover Company

expenses and management fees, for the period not less and not to exceed six

months from April 01 to September 31st, 2018."  In the agreement, Evgeny granted

"patent rights" to specific applications, U.S. Serial No. 62/483,481 and

No. 15/946,570, and International PCT No. PCT/US18/26717 ("Intellectual

Property").  On May 1, 2018, consistent with his obligation under the Preliminary

Agreement, Merzlyakov executed an assignment to 4D Reality for the intellectual

property rights to the identified Intellectual Property.

22.     Additionally, consistent with the Preliminary Agreement, between

June 2, 2018 and September 31, 2018, Merzlyakov further invested, at the periodic

request of Simonian, an additional $60,000 directly into the 4D Reality Bank of

America account, which was exclusively controlled by Simonian.

23.     And shortly before the execution of the Shareholders Agreement, Merzlyakov sent another $100,000, as requested by Simonian, to 4D Reality's Bank of America accounts.  Also, on October 5, 2018, Merzlyakov sent another $4,274 to Hickman.

24.     On November 14, 2018, 4D Reality, Merzlyakov, Simonian and Benashvili entered into a 4D Reality Inc. Shareholders Agreement ("Shareholders Agreement").  As stated in the recitals, the Shareholders Agreement was to "record their agreement as to the manner in which the Corporation's affairs are to be conducted and to agree upon the terms on which the securities of the Corporation, now or hereafter outstanding and held by them, will be held, transferred and voted."

25.     As part of the Shareholders Agreement, 4D Reality "warrant[ed] that as of the date of this Agreement all issued and outstanding Shares are owned as follows" repeating the allocation in the Preliminary Agreement.  As part of the recitals, the parties also represented that "the parties hereto, other than the Corporation, together own, directly or indirectly, all of the issued and outstanding shares in the capital of the Corporation as of the date hereof."

26.     Among other provisions, the Shareholders Agreement provided for the designation and removal of board members, information rights, and prior approval for certain corporate actions.  For instance, Section 4.1 provided that the

"[t]he Corporation shall have a Board consisting of up to three (3) directors of which: (a) one director shall be nominated by the founders (the 'Founder Nominee'), who shall initially be Simonian, as President/CEO; (b) up to two (2) directors shall be nominated by the Investors (the 'Investor Nominee'), who shall initially be Merzlyakov, as Chairman, and Benashvili."  And Section 4.2 provided that "[a]ny Shareholder (or Group of Shareholders) entitled to nominate and elect a director may remove any such director by notice to such director, the other Shareholders and the Corporation."

27.    Simonian, as president of 4D Reality, however, never held any meeting at which directors were to be elected or executed any written resolutions of the shareholders to elect directors different from the original designation in the articles of incorporation, which only designated Simonian and Merzlyakov.

28.    Section 5.1 of the Shareholders Agreement requires that "[t]he Corporation shall prepare and deliver to the Majority Investors," inter alia, "(a) as soon as available after the end of each financial year, unaudited financial statements of the Corporation, including consolidated balance sheets of the Corporation … and consolidated statements of income, retained earnings and changes in cash flow of the Corporation … setting forth in each case in comparative form the corresponding figures for the previous financial year, all prepared in accordance with generally accepted accounting principles; (b) as soon

as available after the end of each quarter, a report prepared by the management of the Corporation regarding such quarter's financial results and operations; … [and] (d) such other financial and business information as any Investor or Founder may reasonably request from the Corporation from time to time."

29.    Although he was a Majority Investor, Investor and Founder (as those terms are defined in the Shareholders Agreement), Merzlyakov was never provided any annual or quarterly financial statements from Simonian, or access to the books and records of 4D Reality, despite requests.

30.    Section 4.3 of the Shareholders Agreement requires that "[i]n addition to any approval, authorization or ratification required by the Act, none of the following shall be carried out and effected by the Corporation without the prior approval of the Board and the prior written approval of each of the Founders and Major Investor: (a) any amendment to the Articles or by-laws of the Corporation that would adversely alter the rights, preferences, privileges or powers of the Shares; (b) any corporation restructuring, amalgamation or merger of the Corporation with any other body corporate …"

31.    After receiving a March 13, 2019 email from Simonian to Merzlyakov, detailing the various projects, and agreements regarding the accounting, budgeting and operation the company, on March 25, 2019, as requested by Simonian, Merzlyakov sent another $45,000 to 4D Reality.

32.     Upon information and belief, all funds provided to 4D Reality were transferred in substantial part to Simonian's corporation, Simonian Consulting, and used for purposes unrelated to the business of 4D Reality.  Indeed, 4D Reality's business address was 19800 MacArthur Boulevard, Suite 300, Irvine, California, 92612, which is Simonian Consulting's registered business address—an address Simonian Consulting had maintained since 2014.

33.     After over 18 months of Merzlyakov funding alleged 4D Reality operations, on September 16, 2019, Simonian, through attorney Vahe Khojayan ("Khojayan"), sent Merzlyakov notice of his intent to dissolve 4D Reality, with a "notice" to the board following on October 1.  In his letter, Simonian claimed that Merzlyakov "failed to deliver to the company any and all intellectual property that would form the basis of the product that 4DR is attempting to market," in spite of Merzlyakov's express, written assignment of the Intellectual Property rights to 4D Reality on May 1, 2018, giving 4D Reality exclusive control of the Intellectual Property (which were patents that clearly detailed all the technology in the claims language).  Simonian claimed that Merzlyakov "failed to honor [his] initial commitment of supporting the company financially," in spite of the $289,024 that Merzlyakov either (a) deposited directly into 4D Reality accounts exclusively controlled by Simonian or (b) directly paid to various accountants, attorneys or other third parties on behalf of 4D Reality, at Simonian's request and direction.

34.     Most significant, Simonian claimed that "senior management and staff [were] working without pay for a long period of time," however, 4D Reality had no employees or any senior management other than Simonian, and indeed, none approved by the board.  Instead, Simonian was paying himself "management fees" to his company Simonian Consulting, without any board resolution adopting any contract with Simonian, disclosure of the amount of fees paid or for what purposes, or any other documentation related to substantial transfers of 4D Reality's operating capital to Simonian Consulting.

35.     Merzlyakov responded on September 18, 2019, addressing specifically Simonian's claims, as well as demanding the corporate financial statements and reports required by Section 5.1 of the Shareholder Agreement, providing notice to remove Benashvili as a director (though he was never actually appointed) as provided by Section 4.2, and a request generally for election of new corporation officers and directors.  As well, on October 2, Merzlyakov sent a separate formal books and records request, under Section 5.1 of the Shareholder Agreement, and also a notice of removal of Benashvili as director, under Section 4.2.

36.     And on October 2, 2019, Merzlyakov sent a notice of rejection of the proposed dissolution, stating expressly, pursuant to Section 4.3 of the Shareholders Agreement, "Matters Requiring Prior Approval," that "I, Evgeny Merzlyakov, as

Charmain of the Board of Directors of 4D Reality, Inc. and as Major Shareholder – 'Preferred Majority,' I own 86% of Shares of the Corporation, reject the Dissolution of the Corporation because it will cause to the loss of full my investments [sic] in the Corporation."

37.     In spite of the lack of corporation authority, on October 4, 2019, Simonian and Benashvili (by alleged proxy)—Merzlyakov abstaining—purportedly voted to dissolve the corporation under NRS 78.580(1)-(2), which does not require shareholder approval, stating in the purported minutes of the meeting that "no stock was ever issued by the Corporation."  Disregarding Merzlyakov's October 2 notice removing Benashvili, the minutes claimed that "no other business [ ] was brought up before the meeting."

38.     The only apparent attendees of this "meeting" were Simonian and his attorney, Khojayan.

39.     Despite the authorization in the purported minutes and resolution that "[t]he president of the company was authorized to dissolve the corporation according to the applicable statutes and rules, by … filing final tax returns and submitting necessary documents to the state authorities to finalize the dissolution," no certificate of dissolution for 4D Reality or other documentation has been filed with the Nevada Secretary of State for 4D Reality to date.

40.     As its annual report was due with the Nevada Secretary of State on March 31, 2019, but was not filed, 4D Reality is currently in default status.

## CAUSES OF ACTION
## COUNT I – ACCOUNTING
### (against defendants Rouben Simonian and 4D Reality, Inc.)

41.     Plaintiff incorporates by reference paragraphs 1 through 40 as if stated fully herein.

42.     A special relationship of trust and confidence existed between Plaintiff and defendants Simonian and 4D Reality, with whom Plaintiff entered into a joint venture and upon whom Plaintiff relied to determine profits, sufficient to entitle Plaintiff to a right to access to, and an inspection and accounting of, the books and records of 4D Reality.

43.     Furthermore, Plaintiff entered into an enforceable contract with defendants Simonian and 4D Reality, specifically providing for inspection and accounting rights in Section 5.1 of their Shareholders Agreement.  Further still, Plaintiff is a duly appointed director of 4D Reality, and under NRS § 82.186 as well as under Nevada common law, directors are entitled to inspection and accounting rights.

44.     On October 2, 2019, Plaintiff made a proper books and records request, which to date, has been denied by Simonian and 4D Reality.

45.    Plaintiff is entitled to an order compelling the production of all 4D Reality books and records for inspection and an accounting.

## COUNT II – BREACH OF CONTRACT AND SPECIFIC PERFORMANCE
### (against defendant 4D Reality, Inc.)

46.    Plaintiff incorporates by reference paragraphs 1 through 45 as if stated fully herein.

47.    Plaintiff entered into a valid, enforceable stock purchase agreement with defendant 4D Reality, as reflected in the Shareholders Agreement, dated November 14, 2018, with reasonably definite and certain terms, pursuant to which 4D Reality would issue 60,200 shares of its common stock in exchange for Plaintiff's payment of $60,200 to 4D Reality.

48.    Plaintiff performed all of his obligations under the agreements, including paying $60,200 to 4D Reality for his shares on April 17, 2018, and never violated any term or provision of the agreement.

49.    Defendant 4D Reality materially breached the agreement by failing to issue shares to Plaintiff.  The shares are unique, and provide special and specific corporate rights such that a remedy at law is inadequate.

50.    Plaintiff is entitled to an order compelling specific performance, and issuance of his 60,200 shares of 4D Reality stock.

## COUNT III – BREACH OF CONTRACT AND COVENANT OF <u>GOOD FAITH AND FAIR DEALING</u>
### (against defendants Simonian and Benashvili)

51.     Plaintiff incorporates by reference paragraphs 1 through 50 as if stated fully herein.

52.     Plaintiff entered into a valid, enforceable Preliminary Agreement, dated June 2, 2018, and Shareholders Agreement, dated November 14, 2018, with defendants Simonian and Benashvili, pursuant to which the parties agreed, under Section 9.3 of the Shareholder Agreement to "undertake to sign and compete all such deeds, documents, resolutions, minutes and other instruments  and to do all such act as are necessary to give full effect to the terms, conditions and restrictions contemplated by this Agreement and to make them binding on the Parties as well as on third parties who are not privy to the terms hereof," including but not limited to:

a.     Section 3.1(a) that "[e]ach of the Shareholders represents and warrants to each other and to the Corporation that: (a) such Shareholder at the date hereof … owns beneficially and of record the number of Shares set forth opposite such Shareholder's name on Schedule 'A' or Schedule 'A-1' attached hereto";

b.     Section 4.2 that "[a]ny Shareholder (or Group of Shareholders) entitled to nominate and elect a director may remove any such director

by notice to such director, the other Shareholders and the Corporation";

c.  Section 4.3 that "[i]n addition to any approval, authorization or ratification required by the Act, none of the following shall be carried out and effected by the Corporation without the prior approval of the Board and the prior written approval of each of the Founders and Major Investor: (a) any amendment to the Articles or by-laws of the Corporation that would adversely alter the rights, preferences, privileges or powers of the Shares; (b) any corporation restructuring, amalgamation or merger of the Corporation with any other body corporate …"; and

d.  Section 5.1 that "[t]he Corporation shall prepare and deliver to the Majority Investors," _inter alia_, "(a) as soon as available after the end of each financial year, unaudited financial statements of the Corporation, including consolidated balance sheets of the Corporation … and consolidated statements of income, retained earnings and changes in cash flow of the Corporation … setting forth in each case in comparative form the corresponding figures for the previous financial year, all prepared in accordance with generally accepted accounting principles; (b) as soon as available after the end

of each quarter, a report prepared by the management of the Corporation regarding such quarter's financial results and operations; … [and] (d) such other financial and business information as any Investor or Founder may reasonably request from the Corporation from time to time."

53.    Plaintiff performed all of his obligations under the agreements and never violated any term or provision of the agreements.

54.    Simonian and Benashvili materially breached the agreements by failing to (a) issue shares to Plaintiff, (b) provide annual and quarterly statements to Plaintiff, as well as access to book and records upon request, (c) remove Benashvili as a director after notice by Plaintiff and (d) vote against any amendment to the articles of incorporation without the consent of Plaintiff. Moreover, and to the contrary, in breach of the covenant of good faith and fair dealing, defendants attempted to (a) dissolve the corporation in an effort to frustrate Plaintiff's enforcement of his rights under the agreements, (b) appoint Benashvili to serve as a director despite the lack of any corporate resolution, and (c) amend the articles and engage in a corporate restructuring (which a dissolution would effect) without Plaintiff's consent, which he refused to provide.

55.    As a direct and proximate cause of the defendants' misconduct, Plaintiff suffered significant injury and damages.

## COUNT IV – BREACH OF FIDUCIARY DUTY
### (against defendant Rouben Simonian)

56.    Plaintiff incorporates by reference paragraphs 1 through 55 as if stated fully herein.

57.    Plaintiff was a shareholder in 4D Reality, a closely held corporation, and to the extent not recognized as a shareholder, was still a joint venture partner in 4D Reality, based upon his agreements with Simonian and Benashvili and investments into the company.  Defendant Simonian was also a shareholder in 4D Reality, and the principal officer and an inside director of the company, as well as a joint venture partner, in whom Plaintiff placed a special trust and confidence.  As a shareholder (or alternatively, a joint venture partner), president and an inside director, Simonian owed Plaintiff a fiduciary duty of utmost good faith and loyalty. Simonian occupied positions in which the shareholders, including Plaintiff, placed a near-critical level trust, faith and confidence in his judgment, business acumen and advice in performing the principal executive office of 4D Reality.

58.    Simonian materially breached his duty to Plaintiff, _first_, by engaging in self-dealing transactions, paying himself and his company, Simonian Consulting, alleged "management fees" and effectively looting the entire operating capital of 4D Reality, some $265,000, in transactions that were not approved by a majority of disinterested directors of the company, which on the purported terms

and in amounts now appearing to have been transferred by Simonian were unfair and unreasonable under the circumstances.

59.    Second, Simonian breached his fiduciary duty to Plaintiff by (a) failing to issue shares, and then leveraging his own failure as a means to purportedly effect a dissolution to which Plaintiff did not consent, (b) disregarding Plaintiff's notice of removal of the alleged director upon whom Simonian relied to effect the dissolution, and (c) claiming that Plaintiff was not a shareholder, to circumvent Nevada law.

60.    Third, Simonian breached his fiduciary duty to Plaintiff by engaging in various bad faith and grossly negligent derelictions of his duties as an officer and inside director, including but not limited to (a) failing to maintain proper and updated records, in particular failing to deliver annual and quarterly reports, budgets, and provide access to and inspection of 4D Reality's books and records to Plaintiff, and (b) using 4D Reality corporate funds and assets for his personal purposes, including but not limited to paying his Simonian Consulting employees for work performed for his company, Simonian Consulting, using funds transferred to 4D Reality by Plaintiff.

61.    As a direct and proximate cause of Simonian's misconduct, Plaintiff suffered significant injury and damages.

## COUNT V – UNJUST ENRICHMENT
### (against defendants Rouben Simonian and
### Simonian & Associates Consulting, Inc.)

62.    Plaintiff incorporates by reference paragraphs 1 through 61 as if stated fully herein.

63.    Plaintiff invested over $289,024 into 4D Reality, including $265,200 in 4D Reality accounts directly, which upon information and belief, Simonian and Simonian Consulting transferred to themselves, paying for the operations of Simonian Consulting and distributions to Simonian personally.  These funds were provided based upon Simonian and Simonian Consulting's ongoing false and misleading claims that the investment funds were for necessary and legitimate business expenses and being used for 4D Reality's operations, including providing "consulting services" to the company necessary for it to achieve its goals.

64.    Defendants, however, failed to pay for expenses related to 4D Reality or provide any reasonable services for the substantial funds they simply misappropriated from the accounts of 4D Reality.  The funds that defendants converted conferred substantial benefits upon Simonian and Simonian Consulting, and each defendant had knowledge and appreciation of the benefits, which they each accepted and retained.

65.    Under the circumstances, it is inequitable for defendants to retain the cash and substantial value that has been conferred upon them.

## COUNT VI – DECLARATORY JUDGMENT
### (against all Defendants)

66.     Plaintiff incorporates by reference paragraphs 1 through 65 as if stated fully herein.

67.     An actual controversy has arisen and exists between the parties, insofar as there is a real dispute caused by the assertion by Plaintiff of a right in which he has a definite interest, specifically, (a) to access and conduct an inspection of the books and records of 4D Reality, (b) an accounting, and (c) issuance of 60,200 shares of 4D Reality stock, all of which Defendants are withholding, and (d) a determination of the validity of any purported dissolution of 4D Reality by board resolution, as Defendants have asserted.

68.     Plaintiff seeks a declaration requiring Defendants to provide access to, and an inspection and accounting of, the books and records of 4D Reality, and issue 60,200 shares of 4D Reality stock to Plaintiff, and determining that no corporate dissolution of 4D Reality was effected by the purported board resolution on October 4, 2019.

69.     The requested declaration is necessary for the parties to be certain about their rights, duties, obligations, status and legal relations, and to preserve those rights, which without speedy relief might otherwise be impaired or lost.

70. The parties have actual, present, antagonistic interests, which are properly before and justiciable by the Court, and the relief sought is not merely for legal advice from the Court or answers to question propounded by curiosity.

**WHEREFORE**, Plaintiff prays that the Court enter a judgment:

(a)   Declaring that Defendants are required to issue stock certificates for 60,200 shares of 4D Reality, Inc. common stock to Plaintiff within thirty (30) days of the date of the order of the Court;

(b)   declaring that Defendants are required to provide access to, and an inspection and accounting of, the books and records of 4D Reality, within thirty (30) days of the date of the order of the Court, and that no corporate dissolution of 4D Reality was effected by the purported board resolution on October 4, 2019;

(c)   awarding damages, including compensatory and punitive damages, to Plaintiff in an amount to be determined at trial;

(d)   awarding Plaintiff his costs and any reasonable attorneys' fees; and

(e)     granting Plaintiff such further and other relief as the

Court may deem just and appropriate under the

circumstances.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  Irvine, California              Respectfully submitted,
        January 15, 2020

                                        EVGENY MERZLYAKOV, by and through
                                        his attorneys,


                                        By:/s/Donald M. Barker
                                        Donald M. Barker (CA SBN 145464)

                                        The Law Offices of Donald M. Barker
                                        2151 Michelson Drive, Suite 140
                                        Irvine, CA 92612
                                        (949) 278-3655
                                        lawbarker40@gmail.com

                                        *Local Counsel for plaintiff Evgeny*
                                        *Merzlyakov*